UNITED STATES of America, Plaintiff,

v.

Richard MOTTOLO, Service Pumping & Drain Co., Inc., K.J. Quinn & Co., Inc., Lewis Chemical Corporation, Carl Sutera, Defendants.

K.J. QUINN & CO., INC. Third Party Plaintiff,

v.

STATE OF NEW HAMPSHIRE Third Party Defendant.

Civ. No. 83–547–D.

United States District Court,
D. New Hampshire.

March 27, 1984.

See also 107 F.R.D. 267.

U.S. Atty. by Douglas J. Miller, Asst. U.S. Atty., Concord, N.H., F. Henry Habicht, II, Action Asst. Atty. Gen. Elizabeth Yu, Atty. Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Andrew S. Hogeland, Lynn Peterson, Office of Regional Counsel US E.P.A. Boston, Mass., for plaintiff.

Engel & Morse, P.A. by Lynn D. Morse, Exeter, N.H., for Richard Mottolo and Service Pumping & Drain Co., Inc.

Stark & Peltonen, P.A. by Rodney L. Stark Manchester, N.H., for K.J. Quinn & Co., Inc.

Sheehan, Phimney, Bass & Green, P.A. by James E. Higgins and Claudia C. Da-

mon, Manchester, N.H., for Lewis Chemical Corp. and Carl Sutera.

Peter Beeson, Asst. Atty. Gen., Environmental Protection Div., Concord, N.H., for State of N.H.

## ORDER

DEVINE, Chief Judge.

The United States of America brings this action under section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a), for reimbursement of costs incurred by the United States in response to the release or threat of release of hazardous substances into the environment from defendant Mottolo's facility in Raymond, New Hampshire ("Mottolo site"). Jurisdiction is founded upon 28 U.S.C. § 1345.

*Sutera Motion to Dismiss*

Defendant Carl Sutera moves to dismiss claims brought against him by the United States. Rule 12(b)(6), Fed.R.Civ.P. Sutera and the United States present matters outside the pleadings, and the Court treats the motion as one for summary judgment. Rule 12(b), Fed.R.Civ.P.

▪ In order to succeed in his motion for summary judgment, Sutera must demonstrate that, viewing the record in the light most favorable to the United States, matters presented to the Court reveal that there is no genuine issue as to any material fact and that Sutera is entitled to a judgment as a matter of law. *Early v. Eastern Transfer*, 699 F.2d 552, 554–55 (1st Cir.), *cert. denied*, 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983). A dispute of fact is material if it affects the outcome of the litigation, and is genuine if manifested by the substantial evidence going beyond the allegations of the complaint. *Pignons S.A. de Mecanique de Precision v. Polaroid Corporation*, 657 F.2d 482, 486 (1st Cir. 1981). Sutera bears the burden of showing that there is no genuine issue as to all the material facts necessary to entitle him to judgment. *Donovan v. Agnew*, 712 F.2d 1508, 1509, 1516 (1st Cir.1983). He must

affirmatively show there is no genuine issue of fact as to every relevant issue raised by the pleadings. *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 991 (1st Cir.1983); *Mack v. Cape Elizabeth School Board,* 553 F.2d 720, 722 (1st Cir. 1977).

The Court briefly recounts the parties' dealings as set forth in the complaint. Plaintiff United States alleges that defendant Richard Mottolo was the owner of the Mottolo site at which Mottolo, d/b/a Service Pumping & Drain Company ("Service"), transported, dumped, and discharged wastes containing hazardous substances. Complaint ¶ 4. Defendant Lewis Chemical Corporation ("Lewis"), a Massachusetts corporation, arranged with Mottolo and/or Service for the disposal of wastes containing hazardous substances owned or possessed by Lewis, which were disposed of at the Mottolo site. ¶ 7. Defendant Carl Sutera is and was at all relevant times the president and principal shareholder of Lewis. ¶ 8. Sutera was and is responsible for the conduct and management of the affairs and activities of Lewis. *Id.* He controls and controlled the affairs and activities of Lewis, and participated in arranging for the disposal of Lewis' wastes at the Mottolo site. *Id.* Lewis and Sutera are persons who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at the dump site owned or operated by another party or entity and containing such substances. ¶ 28.

Defendant Sutera argues that the complaint does not allege that he individually was a person who by contract, agreement, or otherwise arranged for disposal, treatment, or transportation of hazardous waste, and that he is not a person who owned or possessed hazardous substances within the meaning of section 107(a)(3) of CERCLA. In essence, Sutera argues that he operated as Lewis Chemical Corporation to limit his personal liability, and that the United States now improperly seeks to hold him vicariously responsible for the actions of the corporation.

The United States seeks to hold Sutera liable under the provisions of 42 U.S.C. § 9607(a)(3), which states:

> any person who by contract, agreement or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances ... shall be liable....

"Person" means an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body. 42 U.S.C. § 9601(21).

Sutera argues he is not a "person" who arranged for the transport or disposal of hazardous wastes within the meaning of CERCLA. Sutera maintains that any relevant activities occurred while he acted in his capacity as president and shareholder of Lewis; that he did not engage in relevant activities as an individual; that he did not abuse the privilege of operating in the corporate form; and that he breached no duty and broke no existing law at the time he engaged in any relevant activity.

Second, Sutera argues that he did not "own or possess" hazardous substances and that ownership or possession of hazardous substances is required for liability under CERCLA. Sutera claims that Lewis, or a previous occupant of the Lewis plant, owned or possessed the substances. The United States argues that Sutera "possessed" the substances within the meaning of CERCLA by virtue of his control over them. Furthermore, the United States argues that because Sutera arranged for the disposal of the substances, it is not necessary that he owned or possessed them.

In support of his contentions, Sutera avers that he is now and was in 1977–78 the

President, Treasurer, and sole shareholder of Lewis. Sutera Affidavit ¶ 1. The number of Lewis employees has fluctuated between 7 and 12 in addition to himself. ¶ 4. In about 1977 Lewis set up operations in a former leather plant and cleaned up bits of leather and latex. ¶¶ 6, 7. In 1977–78 Anthony Benvenuto, office manager for Lewis, first contacted Service to clear a clogged drain at the plant. ¶ 8. A representative of Service let Benvenuto know that he could remove rubbish, and after this was brought to Sutera's attention, Sutera approved paying Service to remove old leather and latex placed by Lewis employees in barrels stored on the plant property. ¶ 9. Sutera, Lewis, or Lewis's employees did not authorize and are not aware of removal of any toxic materials by Service. ¶ 10.

As president of Lewis, although he does not do everything every day, Sutera is responsible for the entire operation. ¶ 11. In this capacity Sutera authorized Service to remove barrels of leather and latex from the Lewis plant. *Id.* Sutera had no role to play in making or deciding to make telephone calls to Service to let them know they could pick up a load from Lewis. ¶ 12. Mottolo was given no instructions or recommendations as to proper disposal methods by Sutera or any other Lewis employee. ¶ 13. Neither Sutera nor any Lewis employee had any direct knowledge and/or supervision of Service's transportation or disposal of the materials which originated from Lewis. ¶ 14. The materials that Lewis paid Mottolo to take were the property of the corporation and were not Sutera's personal property. ¶ 21. Sutera's contact with those materials was solely in his capacity as agent or servant of the corporation. ¶ 21.

The United States argues that although it has not been given a reasonable opportunity to pursue discovery,[1] it has been able to gather evidence from other sources, which raises a genuine dispute on the facts

of Sutera's participation in and control over Lewis' waste disposal practices. Sutera was involved in "basically every facet" and "just every aspect" of Lewis. 1983 Sutera Deposition, p. 11. He makes all the decisions as to where wastes will be disposed of. *Id.* at 132. Sutera gave the okay for removal of wastes by Mottolo after Mottolo had come down and cleared the drain and made it known that he could remove rubbish. 1980 Sutera Deposition, p. 73. Sutera is responsible for the entire operation of Lewis and does just about everything. *Id.* at 117. Sutera is

> responsible for what happens. I don't actually do everything. In other words, a decision such as giving Mottolo a toxic chemical would—would not be able to come from anyone buy [sic] myself. No one has the authority to do something of that—of that gravity, to make that kind of decision. Now, once I decide that we're going to work along with Mottolo, that we'll give him this material, it wouldn't be my function to call him up each and every time we had to give him something. One of my guys in the plant would be capable of calling him up and saying we have a load for you to pick up. So although I am responsible for making the judgment whether or not he gets that material at all I would not be involved in the mechanics of doing that.

*Id.* at 117–18. Any and/or all employees and officers of Lewis participated in waste removal by Mottolo, 1981 Sutera Answer, ¶ 2, and all transactions between Mottolo and Lewis were with Benvenuto under the supervision of Sutera, 1979 Sutera Answer, ¶ 9.

▮▮▮▮ Under CERCLA, "persons" are liable. 42 U.S.C. § 9607(a)(3). A person under CERCLA includes a corporation. 42 U.S.C. § 9601(21). Allegations against Sutera largely rest on liability stemming from his actions as a corporate officer. Sutera claims that such actions are immunized under the doctrine of limited corporate liabili-

---

1. The United States moves to lift the stay on discovery and to compel discovery in order to support its opposition to Sutera's motion for summary judgment. The outcome of this Order moots the motion to lift the stay.

ty. Corporate officers, however, may be individually liable for the torts of a corporation where they participate in the tortious activity. Fletcher, 3A *Cyclopedia of the Law of Private Corporations* § 1137. It is the general rule that an officer of a corporation is liable for torts in which he personally participated, whether or not he was acting within the scope of his authority, and that such direct personal involvement by the officer is causally related to the alleged injury. *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir.1980). Therefore, as to Sutera's alleged participation in the tortious conduct of Lewis, there exist genuine issues of material fact which require trial on the merits. Rule 56(c), Fed.R.Civ.P.

■ Sutera also argues that he did not own or possess the hazardous substances involved. He avers that the wastes were owned or possessed by Lewis and/or a previous occupant of the plant. The provision under which the United States seeks to hold Sutera liable includes "any person who ... arranged for disposal ... or arranged with a transporter to transport for disposal ... of hazardous substances owned or possessed by such person, by any other party or entity at any facility owned or operated by another party or entity and containing such hazardous substances...." 42 U.S.C. § 9607(a)(3). The provision clearly states that the person who arranges for disposal or transport for disposal of hazardous substances need not own or possess the waste. *United States v. Northeastern Pharmaceutical and Chemical Company, Inc.*, 579 F.Supp. 823, 847 (W.D.Mo.1984). Sutera's alleged involvement with the disposal of the substances is therefore a matter of fact in dispute.

■ Both parties address the issue of whether or not the United States is entitled to raise the corporate alter ego theory of liability of Sutera. Sutera argues that the theory propounded by the United States in its memorandum of law is not even claimed, alleged, or in any way alluded to in its complaint. The United States argues that the alter ego theory of piercing the corporate veil need not be pleaded specifically.

The complaint merely states that Sutera controlled Lewis and does not distinguish between corporate officer versus alter ego theories of liability. There is no allegation of fraud or misuse of the corporate form. In order to warrant piercing the corporate veil, the United States must allege with sufficient particularity that Sutera has so dominated the corporation that it has no will or existence of its own. *Marine Midland Bank v. Miller*, 512 F.Supp. 602, 604 (S.D.N.Y.), *rev'd on other grounds*, 664 F.2d 899 (2d Cir.1981). In other words, for a viable claim to exist, sufficient allegations of fraud must be present to justify piercing the corporate veil. *New York State Teamsters Conference Pension and Retirement Fund v. Hoh*, 554 F.Supp. 519, 525 (N.D.N.Y.1982). While the corporate veil may be pierced in the interests of justice, the complaint is devoid of reference and therefore fails to state a claim. *See United States v. A and C Investments, Inc.*, 513 F.Supp. 589, 591 (N.D.Ill.1981). In keeping with the liberal rules of pleading, the United States is granted leave to amend. Rule 15(a), Fed.R.Civ.P.; *see Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

As a final matter, the Court addresses the motion by Sutera's and Lewis's attorneys for leave to withdraw as counsel. The Court held a hearing in this matter, at which time Sutera stated that neither he nor Lewis was financially able to defend this action. In two previous orders and at hearing the Court laid out the terms for withdrawal. Accordingly, in light of the outcome of Sutera's motion, Sutera's attorney's motion to withdraw is granted, but Lewis' attorney's motion to withdraw is denied.

*Mottolo and Service Counterclaim and United States Motion to Dismiss*

■ Mottolo and Service counterclaim against the United States, and the Court takes the allegations as true. Mottolo and Service allege that at a meeting held with a representative of the United States, the

representative stated that federal funds might be available to assist in improving the Mottolo site. Counterclaim ¶¶ a–c. The representative further stated that no action for reimbursement would be brought against Mottolo. ¶ d. Based upon such representation Mottolo permitted the United States to enter the Mottolo site to improve it and remove waste. ¶¶ e, f. Mottolo and Service claim that but for the statements of the representative, Mottolo would not have permitted the United States to enter the Mottolo site. ¶ g. Mottolo claims detrimental reliance, fraud, misrepresentation, and negligent misrepresentation. Mottolo and Service move to amend the counterclaim to allege that the United States breached its agreement with Mottolo when it instituted these proceedings, and the motion is granted. Rule 15(a), Fed.R. Civ.P.

The United States moves to dismiss. Analysis of this motion brings into play the familiar requirement that the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal ordered only if plaintiff is not entitled to relief under any set of facts it could prove. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976); *Dunlap v. Aulson Corporation*, 90 F.R.D. 647, 654 (D.N.H. 1981).

The United States argues that federal law conclusively and pointedly establishes that claims for misrepresentation may not be made against the United States because it has not waived its sovereign immunity from suit. Enacted in 1946, the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.*, ("FTCA") was designed to avoid the "notoriously clumsy" remedy of a private Congressional bill. *Dalehite v. United States*, 346 U.S. 15, 24–25, 73 S.Ct. 956, 962, 97 L.Ed. 1427 (1953). FTCA was enacted as a waiver of the immunity of the federal government for torts committed by its employees under certain circumstances.

The statute provides that the United States shall be liable for "personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government … under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred". 28 U.S.C. § 1346(b). Although broadly construed, *United States v. Yellow Cab Company*, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951), this consent to suit is not without exceptions. The Act was not a total waiver of sovereign immunity and was aimed primarily at the "ordinary common law torts". *Dalehite v. United States, supra*, 346 U.S. at 28, 73 S.Ct. at 964. Excluded from its coverage are several types of claims, and, as pertinent in the instant case, the statute excludes

> [a]ny claim arising out of … misrepresentation, deceit, or interference with contract rights.

28 U.S.C. § 2680(h).

Within the meaning of the aforesaid statute, the term "misrepresentation" is to be construed according to the traditional and commonly understood definition of such tort, *United States v. Neustadt*, 366 U.S. 696, 702, 81 S.Ct. 1294, 1298, 6 L.Ed.2d 614 (1961); that is, as comprehending claims arising out of negligent as well as willful misrepresentation. *Diaz Castro v. United States*, 451 F.Supp. 959, 960–61 (D.P.R. 1978). Included within the proscription are actions arising out of reliance on government misrepresentation. *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983); *EIMCO–BSP Services Company v. Davison Construction Company, Inc.*, 547 F.Supp. 57 (D.N.H.1982). It is in this case clear that the counterclaim sounds in and arises out of claims of misrepresentation. The counterclaim by Mottolo and Service must therefore be dismissed.

*Quinn Third-Party Complaint and New Hampshire Motion to Dismiss*

■ The United States alleges that K.J. Quinn & Co., Inc. ("Quinn"), arranged with

Mottolo and/or Service for the disposal of wastes containing hazardous substances owned or possessed by Quinn which were disposed of at the dump site. Complaint ¶ 6. The United States seeks reimbursement of cleanup costs. Quinn filed a third-party complaint against the State of New Hampshire for contribution and indemnification due to New Hampshire's negligence in and negligent failure to supervise cleanup operations.

The allegations of Quinn's complaint are taken as true. The damages allegedly incurred by the United States consist of costs incurred by the Environmental Protection Agency and its contractors in cleaning up the dump site. Quinn Complaint ¶ 4. The State of New Hampshire, in conjunction with the United States, took an active role in arranging for and supervising the excavation, temporary storage, removal, and off-site disposal of wastes. ¶¶ 5, 6. On information and belief, Quinn alleges that the State of New Hampshire significantly contributed to the costs necessary in the staging and removal of wastes by its failure to adequately conduct and supervise cleanup operations. ¶ 7.

New Hampshire moves to dismiss on the basis of Eleventh Amendment immunity. The Eleventh Amendment of the United States Constitution provides:

The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The sovereign is clothed with this immunity; New Hampshire is a sovereign state. To the sovereign state's wardrobe of habergeons designed by *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) (holding that federal court cannot entertain suit brought by citizen against own state); *Ford Motor Co. v. Department of Treasury* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945) (holding that Eleventh Amendment bars suit against state officials when the state is the real, substantial party in interest); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (holding that some forms of injunctive relief against state officials for violations of federal law are barred); *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (holding that Eleventh Amendment bars suits for retrospective monetary relief against state); *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (holding that 42 U.S.C. § 1983 does not override states' Eleventh Amendment immunity), and others, can now be added the hauberk designed by *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (holding that Eleventh Amendment bars federal court award of injunctive relief against state officials on the basis of state law). Some chinks remain in the state's armor: *Clark v. Barnard,* 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883) (holding state may consent to suit against it in federal court); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (holding that Eleventh Amendment did not prohibit issuance of injunction by federal court against state officer); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (holding that Congress may abrogate state's Eleventh Amendment immunity); *see New Hampshire v. Brosseau,* 124 N.H. 184, 470 A.2d 869, 874 (1983) (if and when Court reaches constitutionality of sovereign immunity, it would be disposed to reconsider validity of doctrine as it exists today). This Court therefore is asked to determine the existence and extent of New Hampshire's immunity from suit under the Eleventh Amendment.

Quinn, allegedly a Delaware corporation, Complaint ¶ 6, seeks to sue the State of New Hampshire in federal court. By its literal terms, the Eleventh Amendment bars actions in federal court against a state by citizens of another state. *Hollingsworth v. Virginia,* 3 U.S. (3 Dall.) 378, 382, 1 L.Ed. 644 (1798). Quinn seeks money damages; he does not request equitable relief. The Eleventh Amendment bars actions seeking damages against the state. *Great Northern Life Ins. Co. v. Read,* 322

U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Kennecott Cooper Corp v. State Tax Comm'n,* 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946); *Edelman v. Jordan, supra,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Quinn's suit against the State of New Hampshire is therefore initially subject to the Eleventh Amendment jurisdictional bar.

A state may consent to suit. By a parity of reasoning, a state's consent or waiver of its immunity would seemingly be irrelevant under the well-established principle that defects in federal subject-matter jurisdiction cannot be waived nor may such jurisdiction be conferred by consent of the parties. 1 J. Cook & J. Sobreski, Civil Rights Actions ¶ 2.02, p. 2–37, 2–38 (1983). The law is clear, however, that a state can consent or otherwise waive its immunity to suit in federal court. *Clark v. Barnard, supra.* For example, N.H. RSA Ch. 507–B, "Bodily Injury Actions Against Governmental Units", waives certain governmental immunities in tort actions. It does not, however, apply to the state or any department or agency thereof. N.H. RSA 507–B:1 I; *Loopman v. Hurley,* 475 F.Supp. 98, 99 (D.N.H.1979) (Loughlin, J.). N.H.RSA 491:8 partially abrogates the State's sovereign immunity and confers jurisdiction upon the superior court to decide claims against the State founded upon any express or implied contract with the State. *Morgenroth & Associates, Inc. v. Town of Tilton,* 121 N.H. 514, 431 A.2d 770, 772 (1981). However, the statute confers jurisdiction on the superior court and does not by its terms waive the State's Eleventh Amendment immunity from suit in federal court. *See Pennhurst State School & Hospital v. Halderman, supra,* 104 S.Ct. at 909, n. 12; *cf., State of New Hampshire v. Brosseau, supra,* 470 A.2d at 874 (N.H. RSA 171–A:13 does not waive State's Eleventh Amendment immunity from suit in federal court). Furthermore, although Quinn raises in a memorandum of law its status as a third-party beneficiary to a contract between the United States and New Hampshire, its complaint sounds in tort, not contract, and does not fall within RSA 491:8. Quinn's other contentions are without merit. This Court therefore lacks jurisdiction over Quinn's third-party complaint.

All parties and counsel are hereby given notice that this Court will not permit trial to begin unless and until every detail and all matters are thoroughly examined, digested, discussed, and, where appropriate, stipulated to by those involved. Furthermore, counsel shall refrain from bantering about claims of unethical pleading, veracity of affiants, and the like unless they are prepared to pursue such serious allegations to an outcome. At present the District of New Hampshire is the only two-judge district within the First Circuit, and cases are being docketed at a rate of three per judge per day. As most parties are well aware, Judge Loughlin is enmeshed in a similar hazardous waste cleanup case. Full cooperation among the parties and with the Court is expected and greatly appreciated.

Accordingly, it is hereby ordered:

1. Sutera's motion to dismiss is granted only insofar as the United States fails to state a claim under the alter ego theory of piercing the corporate veil. The United States is hereby given leave to so amend the complaint within twenty (20) days. Sutera's motion to dismiss is otherwise denied.

2. The United States' motion to lift the stay on and compel discovery is moot.

3. Sutera's attorney's motion for leave to withdraw as his counsel is granted.

4. Lewis's attorney's motion for leave to withdraw as counsel is denied.

5. Mottolo's and Service's motion to amend counterclaim is granted.

6. The United States' motion to dismiss Mottolo's and Service's counterclaim is granted.

7. New Hampshire's motion to dismiss Quinn's third-party complaint is granted.

SO ORDERED.