Frank J. KELLEY, Attorney General of the State of Michigan, ex rel., MICHIGAN NATURAL RESOURCES COMMISSION, Michigan Water Resources Commission, and Gordon E. Guyer, Director of the Michigan Department of Natural Resources, Plaintiffs,

v.

ARCO INDUSTRIES CORPORATION, Frederick C. Matthaei, Jr., and Robert P. Ferguson, Defendants,

ARCO INDUSTRIES CORPORATION, Third–Party Plaintiff,

v.

NORTHWEST COATINGS CORP., a Wisconsin corporation, General Latex and Chemical Corporation, an Ohio corporation, E.I. DuPont De Nemours and Company, a Delaware corporation, the Village of Schoolcraft, a Michigan municipal corporation, Drake's Fuel Service, Inc., a Michigan corporation, John H. Biewer Company, Inc., a Michigan corporation, Bar–Mo Metalcrafters, Inc., a Michigan corporation, Quality Films, Inc., a Michigan corporation, Grand Trunk Western Railroad Company, a Michigan corporation, Weiss Trucking Company, Inc., an Indiana corporation, Grand Rapids Sash and Door Company, a Michigan corporation, G–H Detroit Holdings Company (formerly Peerless Cement Company), a Delaware corporation, Third–Party Defendants.

No. K87–372–CA4

United States District Court, W.D. Michigan, S.D.

Sept. 27, 1989.

See also, 721 F.Supp. 873.

Frank J. Kelley, Atty. Gen., by Stanley F. Pruss, Asst. Atty. Gen., Environmental Protection Div., Lansing, Mich., for plaintiffs.

Varnum, Riddering, Schmidt & Howle by Charles M. Denton, Grand Rapids, Mich., for Frederick C. Matthaei, Jr.

Miller, Johnson, Snell & Cummiskey by Jon R. Muth, Grand Rapids, Mich., for Robert P. Ferguson.

Warner, Norcross & Judd by Douglas Wagner, Grand Rapids, Mich., for DuPont.

Touma, Watson, Nicholson Whaling, Fletcher & Degrow by Gary A. Fletcher, Port Huron, Mich., for John A. Biewer Co.

Linsey, Strain & Worsfold by Donald Worsfold, Grand Rapids, Mich., Ford & Kriekard by Robert A. Soltis, Kalamazoo, Mich., for Village of Schoolcraft.

Landman, Latimer, Clink & Robb by Steven C. Kohl, Muskegon, Mich., for Drake Fuel Service.

Gemrich, Moser, Bowser, Fette & Lohrmann by Alfred Gemrich, Kalamazoo, Mich.,

for Bar–Mo Metalcrafters and Quality Films.

Clary, Nantz, Wood, Hoffius by Mark R. Smith, Smith, Haughey, Rice & Roegge by Gary A. Rowe, Grand Rapids, Mich., for Grand Rapids Sash & Door.

Clark, Klein & Beaumont by Grant R. Trigger, Detroit, Mich., for Weiss Trucking Co.

Clark, Klein & Beaumont by Laurence Scoville, Detroit, Mich., for G–H Holdings of Detroit.

Honigman Miller Schwartz and Cohn by Jay E. Brant, Detroit, Mich., Butler, Durham & Svikis by Sidney D. Durham, Parchment, Mich., for Arco Industries Corp.

Early, Lennon, Fox, Thompson, Peters & Crocker by Gordon C. Miller, J. Richardson Johnson, Kalamazoo, Mich., Quarles & Brady by Arthur A. Vogel, Jr, James F. Boyle, Milwaukee, Wis., Quarles & Brady, by William H. Harbeck and Jeffrey K. Spoerk (c/o J. Richardson Johnson), Kalamazoo, Mich., for Northwest Coatings.

Miller, Canfield by Robert VanderLaan, Grand Rapids, Mich., Goodwin, Proctor & Hoar by Paul F. Ware Jr, Jeffrey Bates, Barbara Gruenthal, Boston, Mass., Zarbock & Ford by James B. Ford, Kalamazoo, Mich., for General Latex and Chemical.

## OPINION

ENSLEN, District Judge.

The parties in this action have asked the Court to clarify a more exact legal standard by which corporate officers and directors may be held personally liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). The Court in its August 23, 1989 opinion set forth factors relevant to officer and manager liability issues; however, chose not to explicitly define the legal standard. I noted at that time a preference for comparing the facts established at trial with those of previous cases, many of which have not set an explicit standard of liability. In my previous opinion, I also expressed disfavor for imposing personal liability on defendants solely because of their corporate positions. I am convinced that it would be helpful to the parties and otherwise proper to determine a precise standard for individual corporate liability at this time.

### Background
### *The Individuals at ARCO*

1. Robert Ferguson

Robert Ferguson was first employed by ARCO as its Materials Manager from February 1970 through February 1972. As Materials Manager, Ferguson supervised two departments at ARCO, Production Control and Purchasing. After February 1972, Ferguson left ARCO but returned as Assistant to the President in July 1973. In January 1975, Ferguson became Vice–President of ARCO and then President in June 1975. Ferguson currently owns some 11,-500 shares of ARCO stock (less than 5% of the total issued and outstanding shares).

As president and a shareholder of ARCO, Ferguson has responsibilities for certain management and oversight functions. Ferguson is also ARCO's Chief Operating Officer and became a member of the Board of Directors in 1972. As President, Ferguson regularly attends board meetings which take place approximately four times per year. Ferguson reports directly to Matthaei, the Chief Executive Officer of ARCO.

In his capacity as president, Ferguson had direct authority over a number of departments and supervisory personnel. Although the organizational structure changed over time, the plant manager and plant supervisor have reported to Ferguson. After 1975, Ferguson toured the manufacturing areas of the plant on a regular basis.

Memoranda written in response to the passage of the Federal Resource Conservation and Recovery Act ("RCRA") and to establish waste disposal policy for ARCO bear Ferguson's name and signature. Ferguson also reviewed and read the Pollution Incident Protection Plans ("PIPP") submitted by ARCO to the MDNR.

### 2. Frederick Matthaei

In 1967 certain assets of Automotive Rubber Company were purchased by Management and Capital Company, a limited partnership, of which Matthaei was one of two general partners. Thereafter, the name of Automotive Rubber Company was changed to ARCO, and Matthaei became the Chairman and a director of ARCO. In 1975, Management and Capital Company was terminated as a partnership and Matthaei acquired approximately 60% of the issued and outstanding stock in ARCO. Matthaei currently owns approximately 90% of the issued and outstanding ARCO stock, but has been paid no dividend from ARCO. As majority shareholder, under Michigan law and ARCO's articles of incorporation as amended in 1976, Matthaei had the authority to elect the board of directors.

Matthaei is at the ARCO plant in Schoolcraft irregularly, sometimes once a week, sometimes once a month or less. He maintains his sole business office in Bloomfield Hills, Oakland County, Michigan, and also oversees ARCO's operations at two plants in Indiana.

### Discussion

In enacting CERCLA, Congress established "an array of mechanisms to combat the increasingly serious problem of hazardous substance releases." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1078 (1st Cir.1986). In the matter before me, two individual corporate figures face Congress's means of halting irresponsible corporate conduct. Section 107(a)(1) of CERCLA provides a liability scheme for current owners or operators of facilities. *See* 42 U.S.C. § 9607(a)(1).

Quite unambiguously, this statute makes owners and operators of facilities at which there are releases of hazardous substances liable for the government's response costs cleaning up the environmental damage. Similarly, under § 107(a)(2), any person owning or operating a facility at the time of disposal of hazardous substances is liable for response costs incurred at the facility. 42 U.S.C. § 9607(a)(2). That statute reads in relevant part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section—
>
> \* \* \* \* \* \*
>
> (2) any person who at the time of disposal of any hazardous substance *owned or operated* any facility at which such hazardous substances were disposed of [shall be liable under this Section].

*Id.* (emphasis added).

Under 42 U.S.C. § 9601(20)(A), the term "owner or operator" means "in the case of an onshore facility or an offshore facility, any person owning or operating such facility." "Person" includes an "individual, firm, corporation, association, partnership ... commercial entity...." *Id.* at § 9601.

Although CERCLA does not explicitly address whether a court may hold a corporate officer liable for clean-up costs, nor does it set forth any standard, many courts addressing the issue have held that corporate officers may be individually liable for hazardous waste clean-up under CERCLA.[1] Indeed, the weight of authority interprets CERCLA as providing an effective means of achieving its statutory goals by imposing individual liability under certain circum-

---

**1.** At least one court has read the § 107 language "owner or operator" quite literally. In *Idaho v. Bunker Hill Co.,* the district court cited with approval an interpretation of § 107 which suggested a person who owns an interest in a corporation and is actively managing or operating it qualifies the individual as an "owner or operator." 635 F.Supp. 665 (D.Idaho 1986). The *Idaho* court went on to compare the "owner and operator" language in an analogous statute to CERCLA, writing that an "owner or operator" of a facility demonstrates:

> The *capacity* to make timely discovery of [unlawful] discharges.... the *power* to direct the activities of persons who control the mechanisms causing the pollution.... [and] the *capacity* to prevent and abate damage.

*Id.* at 672 (quoting *Apex Oil Co. v. United States,* 530 F.2d 1291, 1293 (8th Cir.1976) (emphasis added)). The court in *Idaho* went on to apply this "owner-operator" definition to a parent corporation where there had been a discharge by its subsidiary.

stances. *See State of New York v. Shore Realty,* 759 F.2d 1032 (2d Cir.1985); *Vermont v. Staco,* 684 F.Supp. 822 (S.D.Vt. 1988); *United States v. Northernaire Plating,* 670 F.Supp. 742 (W.D.Mich.1987); *United States v. Ward,* 618 F.Supp. 884 (E.D.N.C.1985); *U.S. v. Mottolo,* 629 F.Supp. 56 (D.N.H.1984); *U.S. v. Carolawn Co.,* 14 Env't L.Rep. 20,699 (D.S.C. June 15, 1984). *Accord Idaho v. Bunker Hill,* 635 F.Supp. 665 (D. Idaho 1986) (dicta). *But see Joslyn Manuf. Co. v. T.L. James and Co.,* 696 F.Supp. 222 (W.D.La.1988).

▇▇▇ I believe that CERCLA's statutory scheme varies the configuration of traditional corporate principles which prevent individual liability absent a conclusion that an individual engaged in procedural irregularities justifying a court in "piercing of the corporate veil" or that an individual has had close, active involvement or direct supervision in the events leading to the alleged tortious harm.[2] *See, e.g., Shore Realty,* 759 F.2d at 1052; *Mottolo,* 629 F.Supp. at 60; H. Henn, *Law of Corporations* § 218, 230 (2d ed.1970). *But see Joslyn Manuf.,* 696 F.Supp. 222. Courts have not hesitated to hold corporate individuals personally liable for unlawful hazardous waste practices. In *United States v.*

*Northeastern Pharmaceutical & Chemical Co. ("NEPACCO"),* 810 F.2d 726 (8th Cir.1986), the president and major shareholder of NEPACCO was held liable as a "generator" under the Resource Conservation and Recovery Act ("RCRA") despite a finding that he had no knowledge of the plan to dispose of hazardous waste, nor was he present at the plant during the period of waste disposal. The Eighth Circuit observed that its "analysis of the scope of personal liability under the RCRA is similar to our analysis of the scope of individual liability under CERCLA." *Id.* at 745. The Court reasoned that although the president was "not personally involved in the actual decision to transport and dispose of the hazardous substances," he in fact was "in charge of and directly responsible for all of NEPACCO's operations ... and he had the ultimate authority to control the disposal of NEPACCO's hazardous substances." *Id.* at 744.

In a Second Circuit case, the court held the principal officer and shareholder liable as an operator under § 107 of CERCLA where a close corporation purchased contaminated property, but did not actually dispose of hazardous substances. *State of New York v. Shore Realty,* 759 F.2d 1032 (2d Cir.1985). As in *NEPACCO,* the *Shore*

**2.** In *Berger v. Columbia Broadcasting System, Inc.,* 453 F.2d 991, 994 (5th Cir.1972), the Fifth Circuit discussed the importance of the corporate structure:

> It is elemental jurisprudence that a corporation be a creature of the law, endowed with a personality separate and distinct from that of its owners, and that one of the principal purposes for legal sanctioning of a separate corporate personality is to accord stockholders an opportunity to limit their personal liability. *See also Baker v. Raymond International, Inc.,* 656 F.2d 173, 179 (5th Cir.1981) ("[t]he principal of limited liability remains a dominant characteristic of American corporate law."), *cert. denied,* 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982); *Krivo Indus. Supply v. National Distillers and Chemical Corp.,* 483 F.2d 1098, 1102 (5th Cir.1973) ("the corporate form ... is not lightly disregarded since limited liability is one of the principal purposes for which the law has created the corporation."). In *Cort v. Ash,* 422 U.S. 66, 84, 95 S.Ct. 2080, 2091, 45 L.Ed.2d 26 (1975), the Supreme Court refused to create a federal private right of action for allegedly illegal corporate campaign contributions holding that:

> > Corporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law expressly requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation.

> I find more support for displacing traditional, state-created corporate liability standards here, although I agree that "[w]hether latent federal power should be exercised to displace state law is primarily a decision for Congress." *Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). I observe that the literal language of § 107, "owner or operator" suggests that Congress did not intend to exclude a "person" who owns a company (versus who has an ownership interest) or who operates a company. The use of the exception narrows the definition of "owner." *See* 42 U.S.C. § 9601(20)(A) ("owner or operator" excludes "a person who, without participating in the management of a facility, hold indicia of ownership primarily to protect his security interest in the facility."). *See also Shore Realty,* 759 F.2d at 1052; *U.S. v. Carolawn,* 14 Env't L.Rep. at 20,700.

*Realty* court found the vital factor to be as follows: the corporate official "is in charge of the operation of the facility in question, and as such is an 'operator' within the meaning of CERCLA." *Id.* at 1052.

A number of district courts have also premised liability on the factor of control or authority. A recent Vermont case imposed personal liability on the officers of the close corporation because they were managing stockholders. *Vermont v. Staco, Inc.,* 684 F.Supp. 822 (S.D.Vt.1988). Another individual defendant was held liable as a manager who directed the operations of the plant that released the contamination, whereas the managing shareholders participated in general management and control of the corporation, making "decisions that relate to the managing business and the marketing business and the selling businesses and all the overall operations of the company." *Id.* at 831–32 (citing Deposition of Robert Sirkus, at 12 (June 11, 1984)). In addition, in *United States v. Ward,* the court found the corporate president and principal shareholder liable under CERCLA § 107(a)(3) as a generator even without a finding of a knowing involvement by the individual defendant. Under circumstances similar to these cases, the court in *United States v. Carolawn Co.,* 14 Env't L.Rep. 20,699 (D.S.C.1984) held three corporate officers personally liable under CERCLA.

I agree with the weight of authority that, in some circumstances, under CERCLA or related statutory schemes, a court may find an individual personally liable for unlawful hazardous waste practices where strict traditional corporate principles do not apply. Thus I rely in general upon *NEPPACO,* 810 F.2d 726; *Shore Realty,* 759 F.2d 1032; *Vermont v. Staco,* 684 F.Supp. 822; *United States v. Ward,* 618 F.Supp. 884; *United States v. Carolawn Co.,* 14 Env't L.Rep. 20,699; *Idaho,* 635 F.Supp. 665 (dicta). More specifically, there are a number of recurring factors in these cases from which a standard for individual corporate liability can be identified. After distilling the facts supporting liability in this line of cases, I believe that a court under the circumstances before me should weigh the factors of the corporate individual's degree of authority in general and specific responsibility for health and safety practices, including hazardous waste disposal. These factors should be applied in order to answer the question of whether the individual in the close corporation could have prevented or significantly abated the hazardous waste discharge that is the basis of the claim. Although liability under CERCLA is essentially a strict liability scheme, the case law indicates that where CERCLA seeks to impose liability beyond the corporate form, an individual's power to control the practice and policy of the corporation, and the responsibility undertaken by that individual in this area should be considered.

Such an analysis appears to me to be appropriate. Imposing liability on a corporate individual is a serious matter, and because CERCLA provides no explicit way to distinguish among corporate actors, the courts should respond with proper standards. Strict liability may be too harsh and broad-sweeping a standard to apply to all corporate "owners" in all cases. Not all employees or managers of a close corporation will necessarily, absent special factors, be liable for a § 107 claim. Consequently, a more definitive standard seems appropriate.

 This Court will look to evidence of an individual's authority to control, among other things, waste handling practices—evidence such as whether the individual holds the position of officer or director, especially where there is a co-existing management position; distribution of power within the corporation, including position in the corporate hierarchy and percentage of shares owned. Weighed along with the power factor will be evidence of responsibility undertaken for waste disposal practices, including evidence of responsibility undertaken and neglected, as well as affirmative attempts to prevent unlawful hazardous waste disposal. Besides responsibility neglected, it is important to look at the positive efforts of one who took clear measures to avoid or abate the hazardous waste damage. Therefore the Court will look to this

evidence when determining liability by the "prevention" test.

 The standard I have articulated is quite unlike the lack of corporate formalities associated with piercing the corporate veil, and is different from the issue of personal knowledge, direct supervision, or active participation found in most ordinary torts by corporate actors. Here the focus on the inquiry is whether the corporate individual could have prevented the hazardous waste discharge at issue. Thus power or authority will be analyzed, a factor not used in the traditional standards for tortious conduct by corporate individuals. Secondly, the Court, in determining individual liability under § 107, will look at responsibility undertaken for waste disposal practices as it relates to the prevention test. Here active, direct, knowing efforts to prevent or abate the contamination may work for—not against—a corporate defendant where the acts suggest the individual tried but was unable to prevent or abate the unlawful waste disposal. Also the second factor examines explicit responsibility undertaken—through a job description or more informal acceptance—as a means of determining one's ability to prevent disposal problems: presumably being formally or informally delegated to safely dispose of hazardous wastes increases the probability that one could have had a positive effect on disposal practices.

 This standard is different, but more stringent on the whole than traditional corporate tort liability, yet it requires more than mere status as a corporate officer or director, which under CERCLA would be the equivalent of a strict liability standard. The test—whether the individual in a close corporation could have prevented or significantly abated the release of hazardous substances—allows the fact-finder to impose liability on a case-by-case basis, a result I favor in this area due to the seriousness of the potential liability. The test for liability of corporate individuals under CERCLA is thus heavily fact-specific, requiring an evaluation of the totality of the situation.

Moreover, consistent with CERCLA's goals, this standard will encourage increased responsibility with increased authority within a corporation. I take this to be a positive result, and thus a better standard than one which measures only the most direct knowledge or involvement in waste disposal activity, because it encourages responsible conduct instead of causing high level corporate individuals "not to see" and "to avoid getting involved with waste disposal at their facilities." Indeed where a close corporation produces or handles hazardous waste products, the message is quite the opposite. More specifically, I believe that both parts of this test boil down to corporate and societal responsibility—responsibility implicitly undertaken by the acquisition of increased power or authority within the corporation and responsibility explicitly undertaken by job description or agreement. Such a liability standard here will encourage increased responsibility as an individual's stake in the corporation increases.[3] I anticipate that responsibility undertaken will also be less frequently neglected. For many of the same reasons I articulated in my Opinion of August 23, 1989, there are numerous disagreements about genuine issues of material fact in this case. The cross-motions for summary judgment for liability under CERCLA were properly decided.

## ORDER

In accordance with the opinion entered on this date;

IT IS HEREBY ORDERED that plaintiffs' and defendants ARCO's and Matthaei's motions for clarification are GRANTED;

IT IS FURTHER ORDERED that defendant Matthaei's motion for reconsideration is DENIED.

---

**3.** This standard will encourage increased responsibility for two reasons: First, as power grows, the ability to control decisions about waste disposal increases; and second, as one's stake in the corporation increases, the potential for benefiting from less expensive (and less careful) waste disposal practices increases as well.