CBS PERSONNEL SERVICES, LLC
d/b/a EMPLOYEE MANAGEMENT
SERVICES, Plaintiff,

v.

CANADIAN AMERICAN TRANSPORT,
INC., et al., Defendants.

No. 1:02–CV–00670.

United States District Court,
S.D. Ohio,
Western Division.

Oct. 14, 2003.

Edward S. Monohan, IV, Florence, KY, for Plaintiff.

James Eugene Burke, Keating, Muething & Klekamp, Cincinnati, OH, Mitchell J. Banas, Jr., Jaeckle, Fleischmann & Mugel, LLP, Buffalo, NY, Sue A. Erhart, Keating, Muething & Klekamp, P.L.L., Cincinnati, OH, for Defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendants' Motion for Summary Judgment (doc. 24), Plaintiff's Memorandum in Opposition (doc. 28), Plaintiff's Supplemental filing (doc. 29), and Defendants' Reply (doc. 30).

## I. BACKGROUND

This is a contract dispute brought by Plaintiff CBS Personnel Services (hereinafter "CBS"), doing business as Employee Management Services (hereinafter "EMS"), against Canadian American Transport ("CAT") and two of its employees, Doug Spalding and Bernard Yergeau (doc. 18). Plaintiff, headquartered in Cincinnati, Ohio, alleges that it provided temporary and leased employees to Defendants in Columbus, Ohio, pursuant to contract, and the Defendants have failed to pay or refused to make payment (*Id.*). Plaintiff also alleges that CAT employee, Defendant Doug Spalding, personally guaranteed the contract, and as such is liable for a designated portion of the contract, the employee service fee (*Id.*). Plaintiff alleges Defendants falsely stated during negotiations that CAT, a solvent, well-established Canadian Company, was a party to the contract, while secretly incorporating a shell corporation in Ohio, called "C.A.T. Logistics" (hereinafter "CAT Logistics") (*Id.*). Plaintiff further alleges that CAT and its employees Doug Spalding and Bernard Yergeau falsely

stated the contract listed "C.A.T. Logistics" as party merely as a means to identify the Columbus "logistics" operation of CAT (*Id.*). Plaintiff argues that Defendants used Plaintiff's services, incurred debt, closed their Columbus office, and then retreated to Canada without paying the debt (*Id.*). Plaintiff states that Defendants fraudulently attempted to transfer their liability to the shell corporation, which is without assets (*Id.*). Plaintiff posits that CAT Logistics is without assets in part due to the fact that some $100,000.00 was transferred from its account to that of CAT, in order to repay CAT for its start-up expenses (doc. 28). Plaintiff brings this action in order to collect on the debt it alleges is owed by Defendants under the contract (doc. 18).

Although Plaintiff's Complaint refers loosely to the "contract," there are actually three signed agreements at issue in this case. Plaintiff Company offers personnel on both a short-term and long-term basis: under the name of CBS, it provides short-term employees, while under the name of EMS, it offers longer-term "leased" employees. The first contract at issue in this case was not attached to the Amended Complaint, as Plaintiff posits that it led to the other contracts. However, such contract, dated January 8, 2002, is between CBS and "C.A.T.", pertains to short-term employees, and strangely enough, does not define who "C.A.T" is or where "C.A.T." is incorporated. The second contract, also dated January 8, 2002, is between CBS d/b/a EMS and CAT Logistics, and includes the guaranty signed by Doug Spalding. The third contract, dated January 18, 2002, is between CBS d/b/a EMS and CAT Logistics, and includes a clause stating that "[t]his Agreement represents the entire Agreement between the parties and supercedes any previous Agreement relating to the subject matter hereof."

On August 29, 2003, Defendants filed their Motion for Summary Judgment, arguing that the contract containing the personal guaranty by Defendant Spalding was superceded by the subsequent replacement contract, that none of the named Defendants are party to the agreement, that nothing is owed to the Plaintiff under the agreement underlying the alleged guaranty, and that the record belies any claim that Plaintiff was somehow deceived as to the true identity of non-party CAT Logistics (doc. 24).

## II. The Summary Judgment Standard

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for

trial." Fed.R.Civ.P. 56(e); see *Guarino*, 980 F.2d at 405.

As the Supreme Court stated in *Celotex*, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Guarino*, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino*, 980 F.2d at 405 (*quoting InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary Judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. *Guarino*, 980 F.2d at 410; *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991).

## III. Defendants' Motion For Summary Judgment (doc. 24) and Reply Memorandum in Further Support (doc. 30)

Defendants first argue that CAT is not a party to the two agreements affixed to the Amended Complaint, and therefore no contract claim can be asserted against it (doc. 24). Defendants argue the agreements are unambiguous in identifying that Plaintiff was doing business with CAT Logistics (*Id.*). Defendants state it is undisputed that CAT and CAT Logistics are separate and distinct corporate entities (*Id.*).

Defendants secondly raise a number of arguments about the alleged deficiency of Plaintiff's claims: that the Complaint did not attach the only contract, the first among three, under which money is actually due; that CBS and EMS are distinct entities and that the contract under which money is due was entered into by CBS; that the personal guaranty entered into by Defendant Spalding on January 8, 2002, was superceded by the subsequent January 18, 2002 agreement that was devoid of any guaranty.

Third, Defendants argue Plaintiff's Claim of Fraud is meritless and proffer deposition excerpts from Karen York, Plaintiff's Business Development Manager, indicating she knew that CAT Logistics was incorporated in Ohio, and as such, understood it to be separate from CAT (doc. 24). Defendants further proffer evidence that Plaintiff's internal communication refers to CAT Logistics rather than to CAT, and that Plaintiff assisted CAT Logistics in preparing and filing worker's compensation documents on January 18, 2002, which referred to CAT Logistics as an Ohio corporation (*Id.*).

Fourth, Defendants argue Plaintiff's Opposition Memorandum is fatally flawed for having cited deposition transcripts that were not made part of the record (doc. 30). Defendants argue Plaintiff raises a new claim that CAT Logistics corporate veil be pierced and CAT consequently be held liable (*Id.*). Defendants argue under *United States v. Mottolo*, 629 F.Supp. 56, 60 (D.N.H.1984) that where the Complaint is devoid of reference to allegations supporting a claim to pierce the corporate veil, Defendants lack notice of such a claim, and it is inappropriate to raise the theory in an opposition to a motion for summary judgment (*Id.*).

Finally, Defendants argue that Plaintiff's fraud claims fail because of the merger clause in the January 18, 2002 agreement between Plaintiff and CAT Logistics, and because of the Statute of Frauds (doc. 30). As such, Defendants argue, any oral guarantee or representation by Defendants Yergeau or Spalding cannot be the basis for a claim of fraud (*Id.*).

## IV. Plaintiff's Memorandum in Opposition (doc. 28)

Plaintiff argues that Count One of its Complaint against CAT should not be dismissed as Plaintiff entered into the contracts based on the credit of CAT and on the oral representations made by employees of CAT (doc. 28). Plaintiff argues CAT Logistics was a mere puppet of CAT, and that under *Belvedere Condominium Unit Owner's Ass'n v. R.E. Roark Companies, Inc.,* 67 Ohio St.3d 274, 617 N.E.2d 1075, 1086 (1993), it is appropriate in this instance to hold CAT liable for the debts of CAT Logistics (*Id.*). Plaintiff argues that its claim is based on outstanding invoices and on the contracts, including the January 8, 2002 "Service Options and Investment" signed between CBS and "C.A.T." (*Id.*).

Plaintiff argues that Count Two of the Amended Complaint, against Doug Spalding, survives summary judgment as the January 18, 2002 Agreement never rescinded or cancelled the January 8, 2002 contract between EMS and CAT Logistics containing the guaranty agreement signed by Spalding (*Id.*). Plaintiff argues invoices were incurred and not paid prior to the January 18, 2002 agreement, and that the liability for such invoices was not discharged (*Id.*).

Plaintiff argues that Count Three of the Amended Complaint, for fraud, should not be dismissed, as the evidence supports such claim (*Id.*). Plaintiff argues that the contract and the representations made by Defendants are distinct and separable, citing *Djubasak v. Taylor,* 128 N.E.2d 849 (1955) ("The representations are usually not regarded as merged in the contract, and as a result thereof, when a misrepresentation is made, its falsity and deceit is not tolled by later formal expressions in a contract"). Plaintiff argues that it was reasonable for Karen York to believe that CAT Logistics was part of CAT, because her deposition testimony indicates that the principals with whom she dealt were working out of Canada, and decisions and money transfers came from Canada (*Id.*). Plaintiff argues that it discovered at the deposition of Doug Spalding the existence of a Canadian corporation related to CAT, which is also named "C.A.T. Logistics, Inc." (*Id.*). As such, Plaintiff argues, it was reasonable for it to believe that CAT Logistics was a part of CAT, since the name CAT Logistics was listed on CAT's credit report as a related entity (*Id.*). Plaintiff proffers deposition evidence that Defendant Yergeau acknowledged that an amount approximating $200,000.00 was due to CBS, that CBS has not been paid because CAT Logistics has no money, and that some $100,000.00 was transferred from CAT Logistics to CAT to cover start-up expenses. Finally, Plaintiff argues that it would unreasonable for it to extend a credit of more than $200,000.00 to a shell corporation without a personal guarantee (*Id.*).

## V. DISCUSSION

■ The Court finds that Count I of Plaintiff's Amended Complaint, in contract against CAT, survives Defendants' Motion for Summary Judgment. Defendant's Reply Memorandum acknowledges that there are payments due Plaintiff for the provision of temporary workers. As Plaintiff has proffered a signed agreement pertaining to temporary workers, with "C.A.T." as party, a reasonable jury could easily find that CAT, rather than CAT Logistics, is liable for debt incurred under such agreement. Although Plaintiff posits that the

first agreement was a precursor to the others, a reasonable jury could find that on its face, the first contract involves a different party and it involves short-term workers as opposed to long-term workers. As such, unlike the second agreement, it was not superceded by subsequent agreement.

■ Furthermore, Defendants' protests aside, unlike Ohio Rule of Civil Procedure 10(D), the Federal Rules include no requirement that the contract at issue be attached to the Complaint. As such, the Court may properly consider each of the three agreements at issue in this case.

■ Finally, even in the absence of the first agreement, the Court finds that there are disputes as to material facts concerning whether Plaintiff was deceived by Defendants into believing it was dealing with CAT, as opposed to a shell corporation created to facilitate the deal. Plaintiff proffers testimony from its employees indicating they understood they were dealing with CAT, as evidenced by the facts that they dealt only with CAT employees, that all decisions came from Canada, that CAT provided them with information for a credit report, and that Plaintiff's employees received numerous oral assurances that CAT would pay its bills. At the very least, there is a genuine issue of material fact as to whether Plaintiff was deceived, as Plaintiff alleges, or whether Plaintiff knew all along that CAT Logistics was the legal entity that would pay for its services, as Defendants allege. For all of these above reasons, Defendants' Motion for Summary Judgment on Count I is not well-taken.

■■ Count II is grounded in the personal guaranty signed by Doug Spalding in the January 8, 2002 agreement between EMS and CAT Logistics. The Court finds well-taken Defendants' argument that such agreement was superceded by the January 18, 2002 agreement. However, the Court also finds that the January 18, 2002 agreement did not extinguish any past liabilities accrued pursuant to prior agreement. Consequently, though the January 18th agreement set new terms, with no guarantee, the Court finds that such agreement was in effect from January 18, 2002 forward. Defendant Spalding is therefore liable for any debts accrued prior to January 18, during the period when the guaranty he signed was in effect. The parties dispute the fact as to whether any debts are owed under the January 8, 2002 agreement between EMS and CAT Logistics, further supporting the Court's conclusion that summary judgment is inappropriate on Count II.

■ Count III encompasses Plaintiff's allegations of fraud. Defendants' arguments are not well-taken that such fraud claims are barred by the merger clause in the January 18, 2002 agreement between Plaintiff and CAT Logistics, or because of the Statute of Frauds. The merger clause of the January 18, 2002 contract provides that such contract supercedes all other contracts. However, regardless of the merger clause, extrinsic evidence can be introduced consonant with the parol evidence rule to demonstrate fraud in the inducement. *Watkins & Son Pet Supplies v. Iams, Co.*, 254 F.3d 607, 613 (6th Cir. 2001) *citing Coal Resources, Inc. v. W. Indus. Inc.*, 756 F.2d 443, 447 n. 2 (6th Cir.1985). Similarly, the alleged oral statements by CAT employees that CAT would pay its bills do not necessarily constitute promises upon which Plaintiff is suing, in which case the Statute of Frauds would apply, but rather constitute relevant evidence of alleged fraudulent inducement into the entering of the written contract.[1]

---

1. Defendants cite *Marion Production Credit Association v. Cochran*, 40 Ohio St.3d 265, 274, 533 N.E.2d 325, 334 (Ohio 1988) for the proposition that in order to support "distinct and separable" claim for fraud, the alleged

The Court finds persuasive in this case Plaintiff's citation to *Djubasak v. Taylor*, 128 N.E.2d 849 (1955) for the proposition that the contract and the representations made by Defendants are distinct and separable.

■ Finally, Defendants' citation to *United States v. Mottolo*, 629 F.Supp. 56, 60 (D.N.H.1984), and *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 606 (7th Cir. 2000) does not convince the Court that the pleadings in this case are similarly vague so as to have failed to put Defendants on notice of Plaintiff's piercing-the-corporate-veil claim. Plaintiff's Complaint adequately alleges that agents for CAT set up a shell corporation in Ohio, CAT Logistics, and that CAT controlled CAT Logistics in such a way so as to commit injury-causing fraud against Plaintiff. *Belvedere Condominium Unit Owners' Ass'n v. Roark Companies, Inc.*, 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993). Defendants have no reason to be surprised or to claim that they lacked notice of such a claim.

Defendants are correct in arguing that Plaintiff should attach cited deposition transcripts to its Memorandum in Opposition, pursuant to Local Rule 7.2. However, Defendants are not correct in this case that such failure constitutes a fatal flaw. The Court finds in this case that Defendants do not contest the existence of such depositions, nor contest the veracity of Plaintiff's citation to the content of such proffered statements. As such, Plaintiff can remedy such deficiency by filing the pertinent deposition transcripts forthwith.

## VI. CONCLUSION

Defendants' Motion for Summary Judgment fails on each Count of Plaintiff's Complaint. First, a reasonable jury could find that Defendant CAT owes Plaintiff for the provision of temporary workers under the first January 8, 2002 agreement, that lists "C.A.T." as contracting party. Second, a reasonable jury could find that the facts of this case support a claim for fraud in the inducement. Plaintiff proffers evidence that Defendant Yergeau admitted an outstanding debt due to CBS, but that such debt was unpaid because CAT Logistics has no money, and that CAT Logistics has no money, in part, due to a transfer of funds to CAT to cover start-up expenses. Defendants are correct that the third contract at issue in this case, the January 18, 2002 contract, superceded the second contract in this case. However, the Court finds that as there was no discharge of liability under the second contract, Defendant Spalding remains liable for debts accrued until January 18, 2002. The Court rejects Defendants' arguments that Plaintiff's fraud claims fail, because the oral representations allegedly made by Defendants are distinct and separable from the resulting written contracts. Finally, Plaintiff's Complaint adequately places Defendants on notice of the claim that CAT Logistics corporate veil be pierced and CAT consequently be held liable.

Accordingly, Defendants' Motion for Summary Judgment is DENIED (doc. 24).

SO ORDERED.

misrepresentation(s) must be "premised upon matters which are wholly extrinsic to the writing. The Statute of Frauds may not be overcome by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing." The Court does not find *Marion* apposite, because in this case the contract contains no language directly contradicting any alleged oral promises on the part of CAT to pay its bills.