Frank J. KELLEY, Attorney General of the State of Michigan; and the State of Michigan, Plaintiffs,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Sol-

vent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; Richard E. Thomas; and Grand Trunk Western Railroad Company, Defendants.

and

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Counter Plaintiff,

v.

Frank J. KELLEY, Attorney General of the State of Michigan; and the State of Michigan, Counter Defendants.

and

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Cross Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; and Richard E. Thomas, Cross Defendants.

and

THOMAS SOLVENT COMPANY and Richard Thomas, Counter Plaintiffs,

v.

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Counter Defendant.

and

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Third–Party Plaintiff,

v.

Richard E. THOMAS, as Trustee of The Richard E. Thomas Living Trust; the Richard E. Thomas Living Trust; and Letha Thomas, Third–Party Defendants.

UNITED STATES of America, Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Sol-

vent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation Company; Richard E. Thomas, and Grand Trunk Western Railroad Company, Defendants.

and

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Cross Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation Company; and Richard E. Thomas, Cross Defendants.

and

THOMAS SOLVENT COMPANY and Richard Thomas, Counter Plaintiffs,

v.

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Counter Defendant.

and

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Third–Party Plaintiff,

v.

Richard E. THOMAS as Trustee of The Richard E. Thomas Living Trust; Richard E. Thomas Living Trust; and Letha Thomas, Third–Party Defendants.

Nos. K86–164, K86–167.

United States District Court,
W.D. Michigan.

Dec. 13, 1989.

See also 727 F.Supp. 1532.

Frank J. Kelley, Atty. Gen. by Robert P. Reichel, Asst. Atty. Gen., Environmental Protection Div., Lansing, Mich., for plaintiffs and counter defendants.

Foster, Swift, Collins & Coey, P.C. by Charles E. Barbieri, John L. Collins, Lansing, Mich., for Thomas Solvent Co. and Richard E. Thomas.

Sullivan, Hamilton & Schulz by James M. Sullivan, Battle Creek, Mich., for Thomas Solvent Co. of Detroit, Inc., Thomas Solvent, Inc. of Indiana, TSC Transp. Inc., Thomas Solvent Co. of Muskegon, Inc. and Thomas Development, Inc.

Bodman, Longley & Dahling by Frederick J. Dindoffer, R. Craig Hupp and Mary P. Sclawy, Detroit, Mich., for Grand Trunk Western R. Co.

John S. Smietanka, U.S. Atty. by Julie Ann Woods, Asst. U.S. Atty., Grand Rapids, Mich., Joel M. Gross and Steven J. Willey, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C. (Roger Grimes and Jessie A. Goldfarb, Asst. Regional Counsel, U.S. E.P.A., Chicago, Ill., of counsel), for the U.S.

Bremer, Wade, Nelson & Alt by Michael D. Wade, Grand Rapids, Mich., for Great American Surplus Lines Ins. Co.

Farr & Oosterhouse by Kenneth R. Oosterhouse, Grand Rapids, Mich., amicus curiae, for General Foods Corp., Essex Group, Inc., BASF Corp., Tyler Refrigeration Corp., G.F. Corp., Clark Equipment Co., Reichold Chemical, Inc., Miles Laboratory, Inc., Hoover Universal, Inc., Starcraft Corp., Lear Siegler, Inc., Twin Y Corp. and Acme Printing Ink Co.

Patton, Boggs & Blow by J. Gordon Arbuckle, John C. Martin and David J. Farber, Washington, D.C., amicus curiae, for General Foods Corp., Essex Group, Inc. and BASF Corp.

## OPINION

ENSLEN, District Judge.

This case is currently before me on third party plaintiff's Grand Trunk and third par-

ty defendant Letha Thomas's cross motions for summary judgment. Grand Trunk's Motion for Summary Judgment against Letha Thomas was filed in this Court on January 27, 1988. L. Thomas's motion was filed on January 22, 1988 as one for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure; however, this Court treated it as one for summary judgment, as discussed herein.

*Facts*

By way of a brief background, in this action, plaintiffs seek to recover costs incurred by the United States Environmental Protection Agency ("EPA") in responding to releases of hazardous substances which penetrated soil, entered groundwater and contaminated a substantial number of wells at the Verona Well Field. The Verona Well Field serves as a public water supply for 35,000 residents of the City of Battle Creek, Michigan.

The complaint alleges that in August of 1981 the Verona Well Field was found to be contaminated with various organic solvents. Since 1981, EPA has taken, and it continues to take, various response actions at and around the Verona Well Field to prevent the further migration of the contamination, and to protect the public health, welfare, and the environment. At this time, EPA's response costs exceed 4.5 million dollars. In the main action, plaintiffs, the United States and the State of Michigan, seek recovery of the costs incurred to date and a declaration that defendants are liable for future response costs. Grand Trunk has third party claims pending against all defendants as well. In June 1989, I approved a partial consent decree and judgment between plaintiffs and defendant Grand Trunk Railroad Co.

*Standard*

In this matter, I have before me a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Motion to Dismiss is brought by third party defendant Letha Thomas who asks the Court to dismiss Count I of the third party complaint against her. In support of that motion, L. Thomas submitted an affidavit for the Court's consideration. Grand Trunk also submitted evidence supplementing its pleadings. Rule 12(b) provides, however, as follows:

> If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbers (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, *the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56*, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Thus, since I shall be considering matters outside the pleadings, it is proper for me to treat L. Thomas's motion to dismiss as one for summary judgment.

*Discussion*

*Summary Judgment Standard*

In considering a motion for summary judgment, the narrow questions presented to this Court are whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." F.R.Civ. Proc. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

The moving party has a right to summary judgment where that party is able to demonstrate, prior to trial, that the claims of the plaintiff have no factual basis. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As the Supreme Court held in *Celotex*, "... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the bur-

den of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. Moreover, the Court must read the allegations of the complaint in the light most favorable to the non-moving party. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). Where, as here, the moving party has supported its motion with affidavits and other documents, the non-moving party may not rest on the mere allegations or denials of the pleadings, but must set forth "specific facts showing that there is a genuine issue for trial." F.R.Civ. Proc. 56(e); *Davis v. Robbs*, 794 F.2d 1129, 1130 (6th Cir.1986).

The standard for granting a motion for summary judgment is essentially the same as that for granting a motion for a directed verdict. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party is not entitled to summary judgment where there is sufficient evidence to allow a reasonable jury to return a verdict for the non-moving party. *Id.* 477 U.S. at 248–250, 106 S.Ct. at 2510–11, 91 L.Ed.2d at 211–12. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* 477 U.S. at 255–256, 106 S.Ct. at 2513–14, 91 L.Ed.2d at 216. With this standard in mind, the Court will review the arguments presented by both parties.

*Grand Trunk's/Letha Thomas's Cross Motions for Summary Judgment*

I will first consider Grand Trunk's and Letha Thomas's cross motions for summary judgment as to the third party complaint. Each party asserts that it is entitled to judgment as a matter of law. In this third party claim by Grand Trunk against Letha Thomas, third party defendant L. Thomas argues that Count I should be dismissed because she is not a "person" within the context of 42 U.S.C. § 9601, and

further, because she denies that she is the "owner or operator" of either Thomas Solvent Company or Thomas Development Company, Inc. Grand Trunk argues that it should obtain judgment as a matter of law on Counts I and II of its complaint—under § 107 and § 113 of CERCLA—against L. Thomas.

The pertinent facts here include the following. Thomas Solvent Company was in business as a distributor of chemical products which included the purchase, sale, and storage of such products from two locations: one at 1180 North Raymond Road, Battle Creek, Michigan; and the other a short distance away on Emmett Street in the City of Battle Creek, the Annex. The Annex was owned by third party plaintiff Grand Trunk and leased to Thomas Solvent Company.

Grand Trunk alleges that chemicals escaped into the ground and groundwater beneath the premises occupied by Thomas Solvent Company and emanated to or flowed to the lands owned by Grand Trunk, and contaminated its ground and groundwater, ultimately flowing or emanating to the City of Battle Creek's water supply.

The premises occupied by Thomas Solvent Company at North Raymond Road was owned by Thomas Development, Inc., a Michigan corporation. That corporation acquired title to the premises by conveyance dated January 4, 1974. Thomas Development, Inc. leased the premises from the date of its acquisition to Thomas Solvent Company. In 1984, Thomas Development Company sold the Raymond Road property to Thomas Solvent Company.

Grand Trunk alleges that Thomas Development, Inc., was the owner of the Raymond Road facility and that third party defendant L. Thomas is or was a shareholder and President of Thomas Development, Inc. and secretary and a director of Thomas Solvent Company, the operator of both properties.[1] Grand Trunk further alleges

---

1. Grand Trunk's third party complaint against Letha Thomas does not specifically state that she was an officer and director of Thomas Solvent Company. That is, however, one of many facts that established her as being a "person"

covered by the Act, an allegation that Grand Trunk did make. Moreover, she has admitted her status as an officer and director. *See* Third Party Plaintiff's Ex. 1, at 16. It is well established that when a fact is proved, the Court will

that the Raymond Road site and the Annex are each a "facility" within the meaning of 42 U.S.C. § 9601 and that Letha Thomas is a "person" and the "owner or operator" of the "facility" at Raymond Road and at the Annex within the meaning of 42 U.S.C. § 9601.

Defendant L. Thomas admits that Thomas Development, Inc., was the owner of the Raymond Road property and that she was a shareholder, Director and President of that corporation until 1984. For the purposes of this motion, L. Thomas also admits that said premises are each a "facility" within the meaning of 42 U.S.C. § 9601, but denies that Letha Thomas is a "person" in the context of the Act,[2] and denies that she is the "owner or operator" of such "facility."

The law on the issue of individual shareholders, directors, officers, and managers of closely held corporations has been discussed and developed in detail by this Court in *Kelley v. Arco Industries Corp.*, 723 F.Supp. 1214, 1217–1220 (W.D.Mich. 1989). I adopt the legal standard and reasoning set forth therein and restated below.

### Discussion

■ In enacting CERCLA, Congress established "an array of mechanisms to combat the increasingly serious problem of hazardous substance releases." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1078 (1st Cir.1986). In the matter before me, an individual corporate figure faces Congress's means of halting irresponsible corporate conduct. Section 107(a)(1) of CERCLA provides a liability scheme for current owners or operators of facilities. *See* 42 U.S.C. § 9607(a)(1). Quite unambiguously, this statute makes owners and operators of facilities at which there are releases of hazardous substances liable for the government's or another person's response costs cleaning up the envi-

ronmental damage. Similarly, under § 107(a)(2), any person owning or operating a facility at the time of disposal of hazardous substances is liable for response costs incurred at the facility. That statute reads in relevant part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section—
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (2) any person who at the time of disposal of any hazardous substance *owned or operated* any facility at which such hazardous substances were disposed of shall be liable for—
>
> (A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan; [and]
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan.
>
> \*　　\*　　\*　　\*　　\*　　\*

42 U.S.C. § 9607(a)(2).

Under 42 U.S.C. § 9601(20)(A), the term "owner or operator" means "in the case of an onshore facility or an offshore facility, any person owning or operating such facility." "Person" includes an "individual, firm, corporation, association, partnership . . . commercial entity. . . ." *Id.* at § 9601.

Under CERCLA's contribution statute, any person may seek contribution from any other liable or potentially liable party under § 107(a). That statute read in relevant part:

(1) Contribution

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance

---

conform the pleadings to the proof shown. Fed.R.Civ.P. 15(b).

**2.** Although third party defendant denies that she is a "person" under the Act, she admits that because CERCLA defines "person" as "an indi-

vidual", she "would come within the category of a 'person' [as defined by the Act], as would any human being." Motion to Dismiss Third Party Complaint, at 5 (Jan. 22, 1988).

with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title. 42 U.S.C. § 9613(f)(1).

Although CERCLA does not explicitly address whether a court may hold a corporate officer liable for clean-up costs, nor does it set forth any standard, many courts addressing the issue have held that corporate officers may be individually liable for hazardous waste clean-up under CERCLA.[3] Indeed, the weight of authority interprets CERCLA as providing an effective means of achieving its statutory goals by imposing individual liability under certain circumstances. *See New York v. Shore Realty,* 759 F.2d 1032 (2d Cir.1985); *Vermont v. Staco, Inc.,* 684 F.Supp. 822 (S.D.Vt.1988); *United States v. Northernaire Plating,* 670 F.Supp. 742 (W.D.Mich.1987); *United States v. Ward,* 618 F.Supp. 884 (E.D.N.C. 1985); *U.S. v. Mottolo,* 629 F.Supp. 56 (D.N.H.1984); *U.S. v. Carolawn Co.,* 14 Env't L.Rep. 20,699 (D.S.C. June 15, 1984). *Accord Idaho v. Bunker Hill,* 635 F.Supp. 665 (D.Idaho 1986) (dicta). *But see Joslyn Corp. v. T.L. James and Co.,* 696 F.Supp. 222 (W.D.La.1988).

I believe that CERCLA's statutory scheme varies the configuration of traditional corporate principles which prevent individual liability absent a conclusion that an individual engaged in procedural irregularities justifying a court in "piercing of the corporate veil" or that an individual has had close, active involvement or direct supervision in the events leading to the alleged tortious harm.[4] *See, e.g., Shore Re-*

---

**3.** At least one court has read the § 107 language "owner or operator" quite literally. In *Idaho v. Bunker Hill Co.,* the district court cited with approval an interpretation of § 107 which suggested a person who owns an interest in a corporation and is actively managing or operating it qualifies the individual as an "owner or operator." 635 F.Supp. 665 (D.Idaho 1986). The *Idaho* court went on to compare the "owner and operator" language in an analogous statute to CERCLA, writing that an "owner or operator" of a facility demonstrates:

> The *capacity* to make timely discovery of [unlawful] discharges.... the *power* to direct the activities of persons who control the mechanisms causing the pollution.... [and] the *capacity* to prevent and abate damage.

*Id.* at 672 (quoting *Apex Oil Co. v. United States,* 530 F.2d 1291, 1293 (8th Cir.1976) (emphasis added)). The court in *Idaho* went on to apply this "owner-operator" definition to a parent corporation where there had been a discharge by its subsidiary.

**4.** In *Berger v. Columbia Broadcasting System, Inc.,* 453 F.2d 991, 994 (5th Cir.1972), the Fifth Circuit discussed the importance of the corporate structure:

> It is elemental jurisprudence that a corporation be a creature of the law, endowed with a personality separate and distinct from that of its owners, and that one of the principal purposes for legal sanctioning of a separate corporate personality is to accord stockholders an opportunity to limit their personal liability.

*See also Baker v. Raymond International, Inc.,* 656 F.2d 173, 179 (5th Cir.1981) ("[t]he principal of limited liability remains a dominant characteristic of American corporate law."), *cert. denied,* 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982); *Krivo Indus. Supply v. National Distillers and Chemical Corp.,* 483 F.2d 1098, 1102 (5th Cir.1973) ("the corporate form ... is not lightly disregarded since limited liability is one of the principal purposes for which the law has created the corporation." In *Cort v. Ash,* 422 U.S. 66, 84, 95 S.Ct. 2080, 2090, 45 L.Ed.2d 26 (1975), the Supreme Court refused to create a federal private right of action for allegedly illegal corporate campaign contributions holding that:

> Corporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law expressly requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation.

I find more support for displacing traditional, state-created corporate liability standards here, although I agree that "[w]hether latent federal power should be exercised to displace state law is primarily a decision for Congress." *Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). I observe that the literal language of § 107, "owner or operator" suggests that Congress did not intend to exclude a "person" who owns a company (versus who has an ownership interest) or who operates a company. The use of the exception narrows the definition of "owner." *See* 42 U.S.C. § 9601(20)(A) ("owner or operator" excludes "a person who, without participating in the management of a facility, hold indicia of ownership primarily to protect his security in-

*alty,* 759 F.2d at 1052; *Mottolo,* 629 F.Supp. at 60; H. Henn, *Law of Corporations* § 218, 230 (2d ed. 1970). *But see Joslyn Corp.,* 696 F.Supp. 222. Courts have not hesitated to hold corporate individuals personally liable for unlawful hazardous waste practices. In *United States v. Northeastern Pharmaceutical & Chemical Co. ("NEPACCO"),* 810 F.2d 726 (8th Cir.1986), the president and major shareholder of NEPACCO was held liable as a "generator" under the Resource Conservation and Recovery Act ("RCRA") despite a finding that he had no knowledge of the plan to dispose of hazardous waste, nor was he present at the plant during the period of waste disposal. The Eighth Circuit observed that its "analysis of the scope of personal liability under the RCRA is similar to our analysis of the scope of individual liability under CERCLA." *Id.* at 745. The Court reasoned that although the president was "not personally involved in the actual decision to transport and dispose of the hazardous substances," he in fact was "in charge of and directly responsible for all of NEPACCO's operations ... and he had the ultimate authority to control the disposal of NEPACCO's hazardous substances." *Id.* at 744.

In a Second Circuit case, the court held the principal officer and shareholder liable as an operator under § 107 of CERCLA where a close corporation purchased contaminated property, but did not actually dispose of hazardous substances. *New York v. Shore Realty,* 759 F.2d 1032 (2d Cir.1985). As in *NEPACCO,* the *Shore Realty* court found the vital factor to be as follows: the corporate official "is in charge of the operation of the facility in question, and as such is an 'operator' within the meaning of CERCLA." *Id.* at 1052.

A number of district courts have also premised liability on the factor of control or authority. A recent Vermont case imposed personal liability on the officers of the close corporation because they were managing stockholders. *Vermont v. Staco, Inc.,* 684 F.Supp. 822 (S.D.Vt.1988).

terest in the facility."). *See also Shore Realty,* 759 F.2d at 1052; *U.S. v. Carolawn,* 14 Env't

Another individual defendant was held liable as a manager who directed the operations of the plant that released the contamination, whereas the managing shareholders participated in general management and control of the corporation, making "decisions that relate to the managing business and the marketing business and the selling businesses and all the overall operations of the company." *Id.* at 831–32 (citing Deposition of Robert Sirkus, at 12 (June 11, 1984)). In addition, in *United States v. Ward,* the court found the corporate president and principal shareholder liable under CERCLA § 107(a)(3) as a generator even without a finding of a knowing involvement by the individual defendant. Under circumstances similar to these cases, the court in *United States v. Carolawn Co.,* 14 Env't L.Rep. 20,699 (D.S.C.1984) held three corporate officers personally liable under CERCLA.

I agree with the weight of authority that, in some circumstances, under CERCLA or related statutory schemes, a court may find an individual personally liable for unlawful hazardous waste practices where strict traditional corporate principles do not apply. Thus I rely in general upon *NEPPACO,* 810 F.2d 726; *Shore Realty,* 759 F.2d 1032; *Vermont v. Staco, Inc.,* 684 F.Supp. 822; *United States v. Ward,* 618 F.Supp. 884; *United States v. Carolawn Co.,* 14 Env't L.Rep. 20,699; *Idaho,* 635 F.Supp. 665 (dicta). More specifically, there are a number of recurring factors in these cases from which a standard for individual corporate liability can be identified. After distilling the facts supporting liability in this line of cases, I believe that a court under the circumstances before me should weigh the factors of the corporate individual's degree of authority in general and specific responsibility for health and safety practices, including hazardous waste disposal. These factors should be applied in order to answer the question of whether the individual in the close corporation could have prevented or significantly abated the hazardous

L.Rep. at 20,700.

waste discharge that is the basis of the claim. Although liability under CERCLA is essentially a strict liability scheme, the case law indicates that where CERCLA seeks to impose liability beyond the corporate form, an individual's power to control the practice and policy of the corporation, and the responsibility undertaken by that individual in this area should be considered.

Such an analysis appears to me to be appropriate. Imposing liability on a corporate individual is a serious matter, and because CERCLA provides no explicit way to distinguish among corporate actors, the courts should respond with proper standards. Strict liability may be too harsh and broad-sweeping a standard to apply to all corporate "owners" in all cases. Not all employees or managers of a close corporation will necessarily, absent special factors, be liable for a § 107 claim. Consequently, a more definitive standard seems appropriate.

This Court will look to evidence of an individual's authority to control, among other things, waste handling practices—evidence such as whether the individual holds the position of officer or director, especially where there is a co-existing management position; distribution of power within the corporation, including position in the corporate hierarchy and percentage of shares owned. Weighed along with the power factor will be evidence of responsibility undertaken for waste disposal practices, including evidence of responsibility undertaken and neglected, as well as affirmative attempts to prevent unlawful hazardous waste disposal. Besides responsibility neglected, it is important to look at the positive efforts of one who took clear measures to avoid or abate the hazardous waste damage. Therefore the Court will look to this evidence when determining liability by the "prevention" test.

The standard I have articulated is quite unlike the lack of corporate formalities associated with piercing the corporate veil, and is different from the issue of personal knowledge, direct supervision, or active participation found in most ordinary torts by corporate actors. Here the focus on the inquiry is whether the corporate individual could have prevented the hazardous waste discharge at issue. Thus power or authority will be analyzed, a factor not used in the traditional standards for tortious conduct by corporate individuals. Secondly, the Court, in determining individual liability under § 107, will look at responsibility undertaken for waste disposal practices as it relates to the prevention test. Here active, direct, knowing efforts to prevent or abate the contamination may work for—not against—a corporate defendant where the acts suggest the individual tried but was unable to prevent or abate the unlawful waste disposal. Also the second factor examines explicit responsibility undertaken—through a job description or more informal acceptance—as a means of determining one's ability to prevent disposal problems: presumably being formally or informally delegated to safely dispose of hazardous wastes increases the probability that one could have had a positive effect on disposal practices.

This standard is different, but more stringent on the whole than traditional corporate tort liability, yet it requires more than mere status as a corporate officer or director, which under CERCLA would be the equivalent of a strict liability standard. The test—whether the individual in a close corporation could have prevented or significantly abated the release of hazardous substances—allows the fact-finder to impose liability on a case-by-case basis, a result I favor in this area due to the seriousness of the potential liability. The test for liability of corporate individuals under CERCLA is thus heavily fact-specific, requiring an evaluation of the totality of the situation.

Moreover, consistent with CERCLA's goals, this standard will encourage increased responsibility with increased authority within a corporation. I take this to be a positive result, and thus a better standard than one which measures only the most direct knowledge or involvement in waste disposal activity, because it encourages responsible conduct instead of causing high level corporate individuals "not to see" and "to avoid getting involved with waste disposal at their facilities." Indeed

where a close corporation produces or handles hazardous waste products, the message is quite the opposite. More specifically, I believe that both parts of this test boil down to corporate and societal responsibility—responsibility implicitly undertaken by the acquisition of increased power or authority within the corporation and responsibility explicitly undertaken by job description or agreement. Such a liability standard here will encourage increased responsibility as an individual's stake in the corporation increases.[5] I anticipate that responsibility undertaken will also be less frequently neglected.

 Neither party has convinced the Court in this case that the issue of whether third party defendant Letha Thomas is an "owner or operator" for purposes of individual liability under CERCLA has been resolved as a matter of law. To begin with, defendant L. Thomas admits that she was president and a shareholder of Thomas Development Company and a secretary and director of Thomas Solvent Company. Under the prevention test, there are a multitude of factual issues yet to be resolved. The affidavit of Letha Thomas, stating that she at no time had any individual interest in the Raymond Road premises and that the sole ownership was in the corporate entity Thomas Development, Inc. is insufficient to relieve her of liability as a matter of law.

## ORDER

In accordance with the opinion entered this date;

IT IS HEREBY ORDERED that third party plaintiff Grand Trunk's January 27, 1988 motion for summary judgment as to Counts I and II of the third party complaint is DENIED; and

IT IS FURTHER ORDERED that Letha Thomas's January 22, 1988 motion for summary judgment as to Count I of the third party complaint is DENIED.

5. This standard will encourage increased responsibility for two reasons: First, as power grows, the ability to control decisions about waste disposal increases; and second, as one's stake in the corporation increases, the potential for benefiting from less expensive (and less careful) waste disposal practices increases as well.