Frank J. KELLEY, ex rel. STATE OF MICHIGAN and Michigan Department of Natural Resources, Plaintiffs,

v.

KYSOR INDUSTRIAL CORPORATION; Four Winns, Inc.; Jomarc Company; Leo Ingraham, Sr.; Jean Ingraham; R.W. Meyer, Inc.; Raymond A. Weigel; Robert W. Meyer, Jr.; and Ben Kowalski, Defendants,

and

KYSOR INDUSTRIAL CORPORATION; Four Winns, Inc.; and R.W. Meyer, Inc., Defendants/Third–Party Plaintiffs,

v.

FIAMM TECHNOLOGIES, INC., d.b.a. Signaltone, Inc.; A.H. Joynt, Inc.; Michigan Rubber Products, Inc.; and Paulstra CRC Corporation, f/k/a Cadillac Molded Rubber, Inc., Third–Party Defendants,

and

FIAMM TECHNOLOGIES, INC., Counter–plaintiff/Third–Party Defendant,

v.

KYSOR INDUSTRIAL CORPORATION; Four Winns, Inc.; and R.W. Meyer, Inc., Counter-defendants/Third–Party Plaintiff,

v.

FIAMM TECHNOLOGIES, INC., Third–Party Defendant/Fourth–Party Plaintiff,

v.

VALEO AUTOMOTIVE, INC., Fourth–Party Defendant.

No. 5:91:CV:45.

United States District Court, W.D. Michigan.

June 14, 1993.

---

Christopher D. Dobyns, Asst. Atty. Gen., A. Michael Leffler, Jeremy M. Firestone, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Lansing, MI, for Frank J. Kelley, State of Michigan and Michigan Dept. of Natural Resources.

John D. Dunn, Devin Sean Schindler, William K. Holmes, Melvin G. Moseley, Jr., Warner, Norcross & Judd, Grand Rapids, MI, for Kysor Indus. Corp., Raymond A. Weigel.

Charles M. Denton, David E. Preston, Ronald G. DeWaard, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Four Winns, Inc.

Jomarc Co., pro se.

Lawrence P. Mulligan, John M. Kruis, Harriet M. Hageman, Smith, Haughey, Rice & Roegge, PC, Grand Rapids, MI, for R.W. Meyer, Inc. and Robert W. Meyer, Jr.

Richard M. Van Orden, Richard M. Van Orden, PC, Grand Rapids, MI, for Ben Kowalski.

J. Michael Smith, Daniel P. Perk, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, for Michigan Rubber Products, Inc.

Charles E. Barbieri, Foster, Swift, Collins & Smith, PC, Lansing, MI, for Fiamm Technologies, Inc.

Steven L. Kreuger, Nelson & Kreuger, PC, Grand Rapids, MI, for A.H. Joynt, Inc.

Alan C. Bennett, Law, Weathers & Richardson, Grand Rapids, MI, Kyle Lawrence Harvey, Timothy John Rooney, Winston & Strawn, Chicago, IL, Dustin P. Ordway, James Gavin O'Connor, Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, MI, for Paulstra CRC Corp.

Scott G. Smith, Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Grand Rapids, MI, Richard A. Glaser, John M. Lichtenberg, Dustin P. Ordway, Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, MI, for Jomarc Co.

Russell F. Ethridge, Valeo Clutches & Transmissions, Inc., Livonia, MI, Michael A. Mazzuchi, Julie Ann Waddell, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, for Valeo Automotive Inc.

## OPINION

ENSLEN, District Judge.

This case is before the Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b) filed by defendant Robert W. Meyer, Jr. The underlying complaint is a civil action for monetary and declaratory relief brought pursuant to Sections 107 and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(g)(2); the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Michigan Environmental Response Act ("MERA"), 1982 P.A. 307, as amended, Mich.Comp.Laws 299.612 and 299.616; for civil penalties and natural resources damages pursuant to the Michigan Water Resources Commission Act ("WRCA"), 1929 P.A. 245, as amended, Mich. Comp.Laws 323.1 *et seq;* and for site access and civil penalties pursuant to MERA, Mich. Comp.Laws 299.610d.

### *Facts*

### General Background [1]

Plaintiffs seek to recover costs incurred for response activities undertaken by plaintiffs at the Cadillac Industrial Park site ("site") to assess the nature and extent of the release of hazardous substances at the site and to prevent exposure to contaminated groundwater; damages for injury to, destruction of, or loss of natural resources resulting from the release of hazardous substances at the site; and civil penalties. Further, plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 9613(g)(2), and Mich. Comp.Laws 299.616, that defendants are liable for all response costs not inconsistent with the National Contingency Plan, 40 C.F.R.Pt. 300 (1988), as amended 55 Fed. Reg. 8666 (March 8, 1990), all costs lawfully incurred by plaintiffs, and damages that plaintiffs will incur in the future at the site.

---

1. This factual information is taken from Plaintiffs' Second Amended Complaint (Oct. 15, 1992).

### The Site

The Cadillac Industrial Park site ("site") encompasses an approximate one-half mile square area along the northern boundary of the City of Cadillac, Wexford County, Michigan. The site includes the North Park and Pine View Subdivisions to the north of the Cadillac Industrial Park, portions of the Vanderjack Industrial Park west of Leeson Avenue, and is bounded by Sixth Avenue to the east and Wright Street to the south.

The site consists of numerous industrial plants, two of which, the former Northernaire Plating Company and Kysor Industrial Corporation, have been listed on the National Priorities List pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and on the Michigan Sites of Environmental Contamination Priority List. Other industrial factories within the site include the former Four Star Corporation plant; the Four Winns, Inc. Frisbie Street plant; and the Four Winns, Inc. (formerly A.H. Joynts, Inc.) West Thirteenth Street plant.

The City of Cadillac water supply well field is located just to the east of the site. The Clam River flows near the southeast portion of the site and receives run-off from the industrial park. Additionally, several private residences and a trailer park exist within the industrial park. Two residential neighborhoods, referred to as the North Park Subdivision and the Pine View Subdivision, are located adjacent to the northern boundary of the Industrial Park in Haring Township.

### Defendant Robert W. Meyer, Jr.[2]

As alleged by plaintiffs in the Complaint, in the late 1960s, an unincorporated entity, R.W. Meyer Construction Company, constructed a building to house a beer and wine distributing business on Sixth Street in Cadillac, Michigan, on property owned by R.W. Meyer, Inc. In order to provide sanitary service to the beer and wine warehouse, a private sanitary sewer was built and installed by R.W. Meyer Construction Company from the warehouse to the city sewer system. Defendant Robert W. Meyer, Jr. was an em-

ployee of R.W. Meyer Construction Company during these events. The private sewerline was constructed to allow the leaching of sanitary sewage to the ground. R.W. Meyer Construction Company was owned by defendant Meyer's father, Robert W. Meyer, Sr. In the early 1970s, when Mr. Meyer, Sr. retired, R.W. Meyer Construction Company ceased doing business. It was succeeded by Meyer Construction Company, an incorporated entity owned and controlled by defendant Robert W. Meyer, Jr. *See* Second Amended Complaint ¶¶ 20–22.

In August 1971, defendant Meyer, as president, and on behalf of R.W. Meyer, Inc., entered into a contract to construct a building for lease to Northernaire Plating Company. Under the agreement, R.W. Meyer, Inc. also furnished water, sewer, plumbing, and heating. Defendant Meyer, on behalf of Meyer Construction Company, supervised the installation of a private sewerline which ran from the Northernaire Building to the previously constructed sewerline serving the beer and wine warehouse. Like the previously constructed sewerline, the Northernaire Plating sewerline was built to leach materials to the ground. Unlike the previously constructed line, however, the new sewerline was intended to transport industrial plating wastes in addition to sanitary sewage. *Id.* ¶¶ 23–24.

Defendant Northernaire Plating Company ran an electroplating business on property owned by R.W. Meyer, Inc. Northernaire's business included flash chrome, hard chrome, bright nickel, sulfonate nickel, black oxide, electroless nickel, and rack and barrel zinc. *Id.* ¶¶ 25–26.

Process wastewater containing cadmium and chromium were discharged to the City of Cadillac's sewer system from 1971 to 1978 via the private sector. As previously mentioned, however, the private sewer system was designed to allow exfiltration of contaminant-laden wastewater into the ground. A dry well within the sewerline and floor drains within the building also allowed the discharge of contaminated wastewater into the ground.

---

**2.** For purposes of this Opinion, I will refer to Defendant Robert W. Meyer, Jr. as "defendant Meyer" or "defendant."

Spills from a concrete pad and leakage from air quality control equipment located on the west side of the Northernaire building were additional sources of contamination. *Id.* ¶¶ 29–30.

Defendant Meyer allegedly entered the Northernaire Plating building approximately six times while Northernaire was in business. During Mr. Meyer's visits to the plating operation, it was generally "dirty" and "quite untidy." Despite the status of Northernaire's operation, on each of these occasions, the only purpose of defendant's visit was to collect rent. *Id.* ¶ 27.

Defendant Meyer was vice president of R.W. Meyer, Inc. and served on its board of directors from April 1964 until April 1983, and from September 1984 until the present. Mr. Meyer was also president of R.W. Meyer, Inc. in August 1971. The board of directors of R.W. Meyer, Inc. has allegedly never held a board meeting. Other than the period from November 10, 1982, until September 1, 1984, defendant Meyer has owned approximately one-third of R.W. Meyer, Inc.'s stock since 1964. Allegedly, defendant Meyer was, and is, in control of or responsible for the operation of R.W. Meyer, Inc. *Id.* ¶¶ 18 & 28.

In 1978, hexavalent chromium was detected in private wells downgradient of Northernaire. Later that year, the City of Cadillac revoked Northernaire's wastewater discharge permit and plugged Northernaire's discharge pipe. In 1981, MDNR inspected the Northernaire plant and discovered that the plant was closed and Northernaire was apparently out-of-business. After two children playing in the area received chemical burns from hazardous waste stored on the Northernaire property, the U.S. Environmental Protection Agency ("EPA"), in conjunction with the MDNR, removed 3,450 gallons of acids, 5,402 gallons of cyanide wastes, and 160 drums of cyanide wastes. One hundred twenty feet of the private sewerline were also removed and the building steamed cleaned. *Id.* ¶¶ 18, 31–32, 34–35. In October 1982, the EPA notified defendant Meyer of his potential liability and responsibility in this matter.

MDNR completed a remedial investigation at Northernaire in 1985. The remedial investigation report documented surface and subsurface soil contamination concentrated around the building and in sewerline sediments and hexavalent chromium groundwater contamination. The 1985 Northernaire remedial action was undertaken and funded jointly by EPA and the State and is still ongoing. Plaintiffs have allegedly incurred $115,000.00 to conduct the Northernaire remedial action. The remedial action includes the excavation and off-site disposal of contaminated soil and sewerline sediments, limited modification of the building, and restoration of the sewerline. *Id.* ¶¶ 36–38.

Plaintiffs claim that defendant Meyer is jointly and severally liable under CERCLA and MERA because he (1) "owns or operates a portion of the site"; (2) "owned or operated a portion of the site at the time of disposal of hazardous substances at the site"; (3) "is a person that by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transport for disposal or treatment of a hazardous substance owned or possess by Mr. Meyer"; and (4) accepted hazardous substances for transport and selected the site." *Id.* ¶ 18; *see also* Plaintiffs' Brief at 2. Moreover, plaintiffs assert that defendant Meyer directly or indirectly discharged injurious substances into the waters of the State of Michigan in violation of WRCA. Second Amended Complaint ¶ 142; *see also* Plaintiffs' Brief at 2–3.

Defendant Meyer argues that plaintiffs have failed to state a claim against him. That is, defendant argues that plaintiffs have failed to allege facts that constitute a cause of action under Rule 12(b)(6).

### *Standard*

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Utils. Co.,* 513 F.2d 1176, 1182 (6th Cir.1975). Technically, of course, the 12(b)(6) motion does not attack the merits of the case. It merely challenges the pleader's failure to state a claim properly. 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1364, at 340 (Supp.1990). In

deciding a 12(b)(6) motion, the court must determine whether plaintiffs' Complaint sets forth sufficient allegations to establish a claim for relief. The court must accept all allegations in the Complaint at "face value" and construe them in the light most favorable to plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Amersbach v. City of Cleveland,* 598 F.2d 1033, 1034–35 (6th Cir.1979).

 The Complaint must in essence set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithan,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *German v. Killeen,* 495 F.Supp. 822, 827 (E.D.Mich.1980). The court cannot dismiss plaintiffs' Complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Conclusory allegations are not acceptable, however, where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves. *Vermillion Foam Prods. Co. v. Gen. Elec. Co.,* 386 F.Supp. 255 (E.D.Mich.1974).

### *Discussion*
### CERCLA and MERA Claims

MERA is generally a mirror image of CERCLA. In enacting the so-called "polluter pay" amendments to MERA in 1990, the Michigan Legislature was fully aware of their statutory counterparts in CERCLA. Thus, it is instructive for this Court to review CERCLA cases involving the analogous provisions of MERA's federal counterpart, CERCLA. *See, e.g., Greek v. Bassett,* 112 Mich.App. 556, 564, 316 N.W.2d 489 (1982) (it is appropriate to rely on judicial interpretations of statutes from other jurisdictions when those statutes closely mirror the Michigan statute at issue); *see also Kelley v. Severance Tool Industries, Inc.,* No. 92–70864–CZ (Ingham County Circuit Court, July 27, 1992) (relying on federal caselaw interpreting CERCLA). Accordingly, I will consider defendant Meyer's CERCLA and MERA arguments together.

As stated above, defendant Meyer argues that plaintiffs have failed to allege facts such that a cause of action is stated under Rule 12(b)(6).

 Generally, CERCLA imposes personal liability on individual corporate officers whom the government has chosen to pursue as part of its enforcement strategy. *See, e.g., Kelley v. Thomas Solvent Co.,* 727 F.Supp. 1532 (W.D.Mich.1989). A "person" is liable under section 107 (42 U.S.C. § 9607(a)) if the government incurs expense costs for a "release, or a threatened release" of a "hazardous substance." *See* 42 U.S.C. §§ 9607(a)(4)(A) & 9601(14). CERCLA provides for four classes of potentially responsible persons ("PRPs"): (1) current owners or operators of a disposal facility, 42 U.S.C. § 9607(a)(1); (2) owners or operators of a disposal facility at the time of disposal, 42 U.S.C. § 9607(a)(2); (3) generators of hazardous waste, 42 U.S.C. § 9607(a)(3); and (4) transporters, or arrangers of transportation, of hazardous waste, 42 U.S.C. §§ 9607(a)(3) & (a)(4).

 The basis of defendant Meyer's argument is that he is not an "owner or operator" under §§ 9607(a)(1) & (a)(2). He asserts that he cannot be held responsible for the contamination at the site because he did not have any role in the management of Northernaire "or the methods it used to dispose of its hazardous waste." Defendant's Brief at 8.

For purposes of a Rule 12(b)(6) motion, I disagree with defendant's argument. I find that, under the "owner or operator" provisions of CERCLA and MERA, plaintiffs have alleged sufficient facts to state a claim. Specifically, plaintiffs allege that defendant Meyer was the vice president and president of R.W. Meyer, Inc., the corporation which holds the legal title to the site, a member of the board of directors, and an owner of one-third of its stock. Second Amended Complaint ¶¶ 18 & 20. Plaintiffs also assert that the board of directors never held a meeting. *Id.* ¶ 28. Further, plaintiffs allege that defendant Meyer entered into an agreement

with a plating company, Northernaire, to provide, among other things, sewer service; that defendant Meyer supervised the sewer installation; and that the sewer was intended to leach contaminants to the ground. *Id.* ¶¶ 23, 24 & 29. Plaintiffs also alleged that defendant Meyer was involved in property management activities such as rent collection. *Id.* ¶ 27. Under these circumstances, plaintiffs have set forth sufficient allegations to establish a claim for relief under the "owner" provision of CERCLA. That is, if true, these facts would show, among other things:

(1) an identity of interests between defendant Meyer and R.W. Meyer, Inc., *Pettaway v. McConaghy,* 367 Mich. 651, 654, 116 N.W.2d 789 (1962); *see also Lettinga v. Agristor Credit Corp.,* 686 F.2d 442, 446 (6th Cir.1982);

(2) that defendant Meyer is the owner of the property, *see, e.g., Montgomery v. Central Nat'l Bank and Trust Co. of Battle Creek,* 267 Mich. 142, 147–48, 255 N.W. 274 (1934) (quoting *Stroh v. City of Detroit,* 131 Mich. 109, 114, 90 N.W. 1029 (1902)); and,

(3) that justice would be served by piercing the veil of R.W. Meyer, Inc., *Industrial Steel Stamping, Inc. v. Erie State Bank,* 167 Mich.App. 687, 692, 423 N.W.2d 317 (1988).

Clearly, if these facts are shown,[3] then defendant Meyer's CERCLA and MERA liability would be premised on him being a site owner through the common law doctrine of piercing the corporate veil. *See, e.g., CPC Intern, Inc. v. Aerojet–General Corp.,* 777 F.Supp. 549, 571–74 (W.D.Mich.1991).

Accordingly, defendant's motion to dismiss the CERCLA and MERA claims is denied.[4]

**WRCA Claim**

Defendant Meyer argues that plaintiffs have failed to state a claim with respect to the Michigan Water Resources Commission Act ("WRCA"). Defendant asserts that there are no allegations in plaintiffs' complaint that he "directly" or "indirectly" dis-

charged substances which are or may be injurious to the public health, safety or welfare, and to other uses which are or might be made of the groundwater resources of the State in violation of sections 6(1) and 7 of the WRCA.

▪ I disagree with defendant. Clearly, the second amended complaint alleges that defendant Meyer violated the WRCA. For instance, the second amended complaint states:

141. Defendants have disposed of hazardous substances on and into the ground at the site. Defendants have not received a permit for such disposal.

142. Defendants' disposal of hazardous substances at the site constitutes a continuing, direct or indirect discharges of substances which are or may become injurious to the public health, safety, or welfare and the domestic, commercial, industrial, agricultural, recreational, or other uses that are being made or which may be made of such groundwater resources in violation of Section 6(1) of WRCA, Mich. Comp.Laws 323.6(1).

143. Defendants' disposal of hazardous substances at the site constitutes a discharge of waste or waste effluent into the waters of the state without a valid permit in violation of Section 7 of WRCA, Mich. Comp.Laws 323.7.

For purposes of Rule 12(b)(6), these allegations are adequate. However, assuming that defendant is making the argument that he cannot be liable because the second amended complaint does not allege actual discharges by him, the motion to dismiss must still be denied. As pointed out above, plaintiffs allege with specificity that defendant Meyer owned and controlled the activity at the site. Specifically, plaintiffs' allege that defendant had: high ranking positions in the corporate hierarchy; owned a large portion of the stock; supervised the installation of the leaching sewerline; managed the proper-

---

**3.** Of course, if plaintiffs' cannot prove these facts, then defendant may move to dismiss under Rule 56.

**4.** I note for the record that plaintiffs have also alleged facts sufficient to state a cause of action

under CERCLA and MERA under other theories as well, including: (1) "operator" liability; (2) "arranger" liability; and (3) "transporter" liability. Defendant has not addressed these arguments.

**1096**

ty; and knew that Northernaire ran a sloppy operation. Thus, plaintiffs allege sufficient facts to show that defendant Meyer was in control at the site.

After reviewing the caselaw on this issue, I find that the ability to control the activities at such a site is undoubtedly sufficient for liability under WRCA. As the Michigan Court of Appeals recently held:

> The element of control, we believe, is equally crucial to a finding of liability for violation of the acts [including the WRCA]. The Legislature, in enacting the various antipollution provisions [including the WRCA], intended not to target mere employees who, despite knowledge of their employers' violations, can do nothing about them, but rather those who, within the corporate structure have the power and authority to correct the conditions that are deemed deleterious to the environment or people of this state.

*Attorney General v. Acme Disposal Co.,* 189 Mich.App. 722, 725, 473 N.W.2d 824 (1991).

The *Acme* Court went on to articulate a "negligence" standard for liability under a number of environmental laws, including the WRCA. That is, the court held that corporate officers and directors are liable for unlawful contamination if it is shown that they knew or "should have known of [the contamination] by exercising ordinary diligence." *Id.* at 726, 473 N.W.2d 824.

In my opinion, this standard provides the correct incentives for corporate officers and directors. Rather than burying their heads in the sand, a "should have known" standard requires corporate officials to take positive steps to avoid contamination, or else suffer the consequences of liability under the environmental laws. Additionally, such a standard takes into account the individual's authority in the corporate structure and their ability to "get things done." Finally, I find that applying the "should have known" standard to liability under the WRCA is consistent with this Court's rulings on liability under CERCLA. As I held in *Kelly v. Thomas Solvent,* 727 F.Supp. 1554, 1562 (W.D.Mich.1989), "the case law [under CERCLA] indicates that where CERCLA seeks to impose liability beyond the corporate form, an individual's power to control the practice and policy of the corporation, and the responsibility undertaken by that individual ... should be considered."

Accordingly, defendant's motion to dismiss the WRCA claim is denied.